UNITED STATES

v.

**Airman Aaron R. MARTENS,
United States Air Force.**

ACM 34637.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 14 May 2001.

17 Jan. 2003.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Major Jeffrey A. Vires, Major Terry L. McElyea, and Major Jefferson B. Brown.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Lance B. Sigmon, and Captain Christa S. Cothrel.

Before VAN ORSDOL, BRESLIN, and ORR, Appellate Military Judges.

BRESLIN, Senior Judge:

The appellant pled guilty to violating a lawful general regulation on divers occasions by displaying and storing sexually explicit materials on a government computer, violat-

ing 18 U.S.C. § 2252A(a)(2)(A) by receiving on divers occasions child pornography that had been transported by computer in foreign commerce, and violating 18 U.S.C. § 2252A(a)(5)(A) by possessing on divers occasions materials containing images of child pornography, in violation of Articles 92 and 134, UCMJ, 10 U.S.C. §§ 892, 934. A military judge, sitting alone as a general court-martial, accepted the appellant's pleas and sentenced him to a bad-conduct discharge, confinement for 28 months, total forfeiture of all pay and allowances, and reduction to E–1. The convening authority approved the sentence as adjudged, and forwarded the case to this Court for review under Article 66(c), UCMJ, 10 U.S.C. § 866(c).

The appellant now contends that his guilty plea to one of the specifications was improvident for several reasons. He argues that his plea to Specification 1 of Charge II alleging a violation of 18 U.S.C. § 2252A(a)(2)(A) was improvident because Congress did not intend that provision to apply outside the territorial limits of the United States. He further argues that the plea should be set aside because the providence inquiry did not reveal a factual basis for finding that the materials moved in "foreign commerce" as alleged.

The appellant was on active duty in the United States Air Force (USAF), stationed at Ramstein Air Base (AB), Germany. He worked on Ramstein AB, handling maintenance on weather, ground, and air traffic control systems. There were four computers in his work section with access to the Internet. On several occasions between 30 October 1998 and 3 August 2000, the appellant used a government computer to search the Internet, download, store, and display pornography.

On 26 July 2000, a co-worker using a government computer inadvertently discovered links to pornographic web sites. Subsequently, investigators found about 10,000 pornographic images and stories involving sex with children on the computer, and traced the files to the appellant.

The appellant lived in USAF dormitories, first at Kapaun Air Station (AS) and later at Ramstein AB. He owned a computer, but did not have access to the Internet in his dormitory. A fireman investigating an alarm found a box hidden above the ceiling tiles in the hallway of the appellant's dormitory. The box contained computer discs, hard drives, letters, and printed documents belonging to the appellant. There were over 900 images of child pornography stored on the computer discs.

The appellant entered into a pretrial agreement with the convening authority. He offered to plead guilty before a military judge, sitting alone, in exchange for a limit on the maximum punishment. The appellant admitted his guilt, and the military judge accepted his pleas. The appellant now contends his guilty pleas cannot stand.

In determining whether a guilty plea is provident, the standard of review is whether there is a " 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Milton*, 46 M.J. 317, 318 (1997) (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991)). *See United States v. James*, 55 M.J. 297, 298 (2001); *United States v. Bickley*, 50 M.J. 93, 94 (1999). If the "factual circumstances as revealed by the accused himself objectively support that plea," the factual predicate is established. *United States v. Faircloth*, 45 M.J. 172, 174 (1996) (quoting *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980)). We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374 (1996). Of course, a guilty plea does not preclude a constitutional challenge to the underlying conviction. *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975).

*Extraterritorial Application of 18 U.S.C. § 2252A(a)(2)(A)*

The appellant contends his guilty plea to Specification 1, Charge II, was improvident because the statute does not apply outside the United States. The specification in question (as amended at trial) alleged that the appellant:

did, at or near Ramstein Air Base, Germany, on divers occasions, between on or about 30 October 1998 and on or about 3 August 2000, knowingly receive by means of a computer, child pornography that had

been transported in foreign commerce, in violation of Title 18, United States Code, Section 2252A(a)(2)(A), conduct of a nature to bring discredit upon the armed forces.

The statute, 18 U.S.C. § 2252A(a)(2)(A), punishes "Any person who ... knowingly receives or distributes—any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer...."

It is well settled that Congress has the authority to enact and enforce laws having effect outside the territorial limits of the United States. *EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991); *Blackmer v. United States,* 284 U.S. 421, 436–37, 52 S.Ct. 252, 76 L.Ed. 375 (1932); *Church v. Hubbart,* 2 Cranch 187, 6 U.S. 187, 234, 2 L.Ed. 249 (1804) (a nation's "power to secure itself from injury may certainly be exercised beyond the limits of its territory"). The issue before us is one of statutory interpretation—whether Congress intended 18 U.S.C. § 2252A(a)(2)(A) to apply to acts committed outside the United States.

The specific section of the statute in question is silent as to its extraterritorial application. The appellant, relying upon the decision in *EEOC v. Arabian Am. Oil Co.,* 499 U.S. at 248, 111 S.Ct. 1227, notes that legislation is presumed to apply only within the territorial jurisdiction of the United States, unless Congress clearly manifests a contrary intent. The appellant argues that we should "infer from congressional silence that the legislature meant to regulate only activities within the nations borders." We find the argument unpersuasive.

In *United States v. Bowman,* 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922), the Supreme Court set out an analytical framework for determining whether Congress intended federal criminal statutes to apply extraterritorially. The Court held that in construing the intent of Congress, courts must look to the nature and description of the crime.

> Crimes against private individuals or their property, like assaults, murder, burglary, larceny, robbery, arson, embezzlement and fraud of all kinds, which affect the peace and good order of the community, must of course be committed within the territorial jurisdiction of the government where it may properly exercise it. If punishment of them is to be extended to include those committed outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard.

*Id.* at 98, 43 S.Ct. 39. The *Bowman* Court recognized that a different rule of interpretation applies when the purpose of the criminal statute is to protect the country from harm that may be committed outside its territorial limits.

> But the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the Government's jurisdiction, but are enacted because of the right of the Government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers or agents. Some such offenses can only be committed within the territorial jurisdiction of the Government because of the local acts required to constitute them. Others are such that to limit their locus to the strictly territorial jurisdiction would be to greatly curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens upon the high seas and in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the locus shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense.

*Id.* at 98, 43 S.Ct. 39.

The appellant relies upon the decision in *EEOC v. Arabian Am. Oil Co.* as the applicable standard for analysis. However, in *Arabian Am. Oil Co.,* the Supreme Court was not concerned with a criminal statute—instead the Court considered whether Title VII applied outside the United States to regulate employment practices. Of course, the regulation of employment conditions is the sort of domestic concern that would logically apply within national territory. In *Arabian Am. Oil Co.,* the Supreme Court made no mention

of the separate standard for criminal offenses set out in *Bowman*, and thus did not overrule that precedent. We note that federal courts have declined to apply the analysis of *Arabian Am. Oil Co.* in construing congressional intent in criminal statutes. *See United States v. Plummer*, 221 F.3d 1298, 1305 n. 4 (11th Cir.2000); *United States v. Dawn*, 129 F.3d 878, 882 n. 7 (7th Cir.1997); *United States v. Vasquez–Velasco*, 15 F.3d 833, 839 n. 4 (9th Cir.1994); *United States v. Harvey*, 2 F.3d 1318, 1327 (3d Cir.1993). *See also United States v. Gladue*, 4 M.J. 1, 4–5 (C.M.A.1977). We conclude that the analytical framework established by *Bowman* must control our analysis in this case.

We may infer congressional intent "from the nature of the offenses and Congress' other legislative efforts to eliminate the type of crime involved." *United States v. Baker*, 609 F.2d 134, 136 (5th Cir.1980). We consider first the purpose of the statute. *See generally* Bradley Scott Shannon, *The Jurisdictional Limits of Federal Criminal Child Pornography Law*, 21 Hawaii L.Rev. 73 (Summer, 1999). The Protection of Children Against Sexual Exploitation Act of 1977 was the basis for Congress' statutory approach to concerns about the sexual exploitation of children. The Act was part of a "comprehensive statutory scheme to eradicate sexual exploitation of children." *United States v. Thomas*, 893 F.2d 1066, 1068 (9th Cir.1990). The statute at issue, 18 U.S.C. § 2252A, was part of the Child Pornography Prevention Act of 1996, one of several amendments that expanded the reach of the congressional enactments. Congress specifically found that "the elimination of child pornography and the protection of children from sexual exploitation provide a compelling governmental interest for prohibiting the production, distribution, possession, sale, or viewing of visual depictions of children engaging in sexually explicit conduct...." Pub.L. 104–208, Div. A, Title I, § 121, subsec. 1 (Sept 30, 1996). Indeed, the Act includes several provisions that clearly reach conduct occurring outside the United States. *See* 18 U.S.C. § 2252(a)(4)(A) and (5)(A) (punishing the sale, possession with intent to sell, or possession of images of children engaged in sexually explicit conduct "in the special maritime or

territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the Government of the United States"); *United States v. Pullen*, 41 M.J. 886, 888 (A.F.Ct.Crim.App.1995). Our review of the statutory framework compels the conclusion that Congress intended it to apply broadly to counter the sexual exploitation of children.

We also examine the language of the statute. We note that the statute in question applies to child pornography that has been transported "in interstate or foreign commerce." The phrase "foreign commerce" means commerce between the United States and a foreign nation. *See* 18 U.S.C. § 10; *Gibbons v. Ogden*, 9 Wheat. 1, 22 U.S. 1, 193, 6 L.Ed. 23 (1824). By proscribing the distribution of child pornography in "foreign commerce," Congress intended the criminal sanctions to apply even where some part of the criminal conduct occurred outside the territorial limits of the United States. A citizen of the United States who sends child pornography from New York to Washington D.C. would be subject to this statute; common sense suggests that Congress would be equally interested in preventing that same citizen from making the same distribution to Washington D.C. from a foreign country. Logic dictates that Congress would not have passed a statute to punish the transportation of child pornography in foreign commerce, while "simultaneously undermining the statute by limiting its extraterritorial application." *See United States v. MacAllister*, 160 F.3d 1304, 1308 (11th Cir.1998).

In *Bowman*, the Supreme Court demonstrated the proper application of this inference by noting, inter alia, that the crime of forging ship's papers applied extraterritorially because, "The natural inference from the character of the offense is that the sea would be a probable place for its commission." *Bowman*, 260 U.S. at 99, 43 S.Ct. 39. The *Bowman* Court offered other examples of offenses, such as enticing desertion from the naval service, bribing military officers, or stealing military property, and noted that it could be properly inferred from the nature of the crime that Congress intended the statutes to apply outside the United States. *Id.*

at 99–100, 43 S.Ct. 39. Federal courts have taken the same approach. *See Plummer,* 221 F.3d at 1305 ("Congress's intent to apply [the attempted smuggling] provision extraterritorially may be inferred from the nature of the offense and the problem at which the statute is directed"); *Vasquez–Velasco,* 15 F.3d at 839 n. 4 ("Limiting the jurisdiction of drug smuggling statutes to activities that occur within the United States would severely undermine their scope and effective operation"); *United States v. Felix–Gutierrez,* 940 F.2d 1200, 1204 (9th Cir.1991) (Congress intended statute punishing kidnapping and murder of DEA agent to apply extraterritorially); *Thomas,* 893 F.2d at 1069 (holding Congress intended 18 U.S.C. § 2251(a), punishing the creation of child pornography intended to be transported in interstate or foreign commerce, to apply extraterritorially).

Perhaps most significantly, we must also consider the nature of the offense Congress intended to punish. As part of the statutory framework for combating the sexual exploitation of children, Congress sought to prevent the distribution of child pornography in the United States by computer. Considering the nature of crimes involving computers, it does not appear that the necessary locus of such offenses would be limited to the territory of the United States. To the contrary, a person using a computer could transport child pornography into the United States from a foreign country with the touch of a button. To limit the applicability to the territorial jurisdiction "would be to greatly curtail the scope and usefulness of the statute." *Bowman,* 260 U.S. at 98, 43 S.Ct. 39.

We are not aware of a decision from another court on the extraterritorial application of 18 U.S.C. § 2252A(a)(2)(A). However, the Navy–Marine Court of Criminal Appeals determined that 18 U.S.C. 2252(a)(2), a similar provision of the Protection of Children Against Sexual Exploitation Act, applies extraterritorially. *United States v. Kolly,* 48 M.J. 795, 796–97 (N.M.Ct.Crim.App.1998). The statute in *Kolly* was a precursor of the provision at issue in this case, and is almost identical, except that § 2252A(a)(2)(A) incorporates the definition of "child pornography"

added to the Act in 1996. *See* Shannon, *supra* at 82. Federal courts examining 18 U.S.C. § 2252(a) have concluded that it applies extraterritorially. *See Harvey,* 2 F.3d at 1327–28 (re: § 2252(a)(2)(4)); *Thomas,* 893 F.2d at 1069 (re: § 2252(a)(2)). We find the logic of these cases to be consistent with *Bowman,* and persuasive.

The appellant argues that Congress' decision to make §§ 2252A(a)(4)(A) and (a)(5)(A) of the Act apply extraterritorially is strong evidence that Congress did not intend for § 2252A(a)(2)(A) to apply outside the United States. The argument has some facial appeal, but is ultimately unpersuasive. Section 2252A sets out numerous prohibitions designed at preventing child pornography, but it does not appear they were written for the purpose of distinguishing between offenses that apply within the United States from offenses that apply outside territorial limits. Rather, the various sections are designed to sanction every act by which child pornography could adversely affect the United States, and to extend the prohibitions to the maximum extent of Congress' legislative authority under the Commerce Clause. Thus, the prohibition of the possession of pornography is extended beyond the territorial limits to include land controlled by the United States government. Similarly, the prohibition of the transportation of child pornography in the United States by computer applies to acts committed within the United States or a foreign country.

The transportation of child pornography in foreign commerce that is, from a foreign country into the United States is obviously an offense "as easily committed by citizens ... in foreign countries as at home." *Bowman,* 260 U.S. at 98, 43 S.Ct. 39. Considering the statutory framework, the nature of the offense, the conduct Congress sought to prohibit, and the interpretation other federal courts have given an almost identical statute, we conclude that Congress intended 18 U.S.C. § 2252A(a)(2)(A) to apply extraterritorially.

*Providence of the Plea–Foreign Commerce*

■ We now consider whether the providence inquiry was sufficient to support the appellant's plea to receiving child pornogra-

phy that had been transported in "foreign commerce" as alleged. We find error and take corrective action.

As noted above, the appellant pled guilty to Specification 1 of Charge II, which alleged a violation of 18 U.S.C. § 2252A(a)(2)(A) by receiving child pornography that had been transported in foreign commerce. The military judge questioned the appellant at length about his understanding of the offenses to which he was pleading guilty, and the factual basis for his plea, as required by Rule for Courts–Martial (R.C.M.) 910(e). The military judge informed the appellant of the elements of the offense. In that regard, she specifically advised him that the crime required that "such child pornography had been transported in foreign commerce," without defining the term "foreign commerce." The appellant agreed that the elements accurately described what he did.

Pursuant to the terms of a pretrial agreement, the appellant agreed to a detailed stipulation of fact, describing the offenses. The military judge discussed the contents of the stipulation thoroughly with the appellant. The appellant stipulated that:

> The child pornography that the accused received had been transported in foreign commerce. The accused was located on Ramstein Air Base, Germany, on each occasion on which he received child pornography via the Internet. The Internet is a worldwide network of interconnected computer servers which permits anyone with access to one connected server to access other connected servers, regardless of the geographic location of either server. When electronic data, such as an image, is transferred from one connected server to another, the data is transferred via the fastest possible route. Such a route often requires the data to pass through transmission lines or computers in several different countries. Therefore, each time the accused downloaded an image of child pornography from a Web site, the image was transported in foreign commerce.

At the conclusion of the military judge's questioning, the appellant indicated his desire to plead guilty. Both parties advised the

military judge that no further inquiry was required.

Unlike the practice in other federal and state courts, Article 45, UCMJ, 10 U.S.C. § 845, requires that a guilty plea be in accordance with actual facts. Of course, where the accused pleads guilty the prosecution has no obligation to present evidence proving guilt.

> [I]f the specification alleges, within its four corners, all elements of the offense in question; if the accused pleads guilty to that specification; and if the inquiry of the accused indicates not only that the accused himself believes he is guilty but also that the factual circumstances as revealed by the accused himself objectively support that plea, then the plea may be accepted by the military judge as provident.

*Davenport,* 9 M.J. at 367. *See also United States v. Garcia,* 44 M.J. 496, 498 (1996); *United States v. Higgins,* 40 M.J. 67, 68 (C.M.A.1994).

It is undisputed that the specification properly alleged an offense, that the appellant thought himself guilty of the crime, and that he pled guilty at trial. The question before us is whether the inquiry of the accused revealed factual circumstances that objectively supported the plea. We are specifically concerned with whether the appellant provided a factual basis for the military judge to find that the child pornography had been transported in foreign commerce. A guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *United States v. Care,* 40 C.M.R. 247, 251, 1969 WL 6059 (C.M.A.1969).

As discussed above, the term "foreign commerce" as used in 18 U.S.C. § 2252A(A)(2)(A), means commerce between the United States and a foreign country. 18 U.S.C. § 10; *Gibbons v. Ogden,* 22 U.S. at 193, 6 L.Ed. 23. At no time did the appellant state that the images in question traveled to, from, or through the United States. The appellant agreed that the charged material had traveled in "foreign commerce," but the military judge never defined that term, or

elicited more detail. The stipulation drafted by the parties suggests—inaccurately—that commerce between any two countries is "foreign commerce" under the charged statute.

Considering all the matters offered in support of the plea, we are not convinced the appellant's responses to the providence inquiry revealed factual circumstances that objectively supported the plea. Therefore, we cannot affirm the findings of guilt to Specification 1 of Charge II as charged.

This does not end our review, however. Article 59(b), UCMJ, 10 U.S.C. § 859(b), provides, "any reviewing authority with the power to approve or affirm a finding of guilty may approve or affirm, instead, so much of the finding as includes a lesser included offense." The appellant was charged under Article 134, UCMJ, and the specification alleged that the appellant's conduct was both in violation of federal law and "of a nature to bring discredit upon the armed forces." The military judge specifically inquired about this element of the charged offense.

> MJ: Do you believe that the knowing receipt and possession of child pornography does tend to bring discredit upon the Armed Forces?
>
> ACC: When done on a military computer, yes.

In response to further questions by the military judge, the appellant agreed that people would think less of the armed forces if they knew that the military allowed people to use official computers on a military installation to receive and store child pornography. We find the appellant demonstrated an understanding of, and an adequate factual basis for, this element of the offense.

We have no doubt that the receipt of images depicting sexually explicit conduct by children, when determined to be service-discrediting conduct, is a violation of Article 134, UCMJ. *United States v. Sapp*, 53 M.J. 90, 92 (2000). Therefore, we find the appellant's plea sufficient to sustain a conviction to the lesser-included offense of a violation of clause 2, Article 134, UCMJ. We will take formal action in our decretal paragraph. Because the scope and fundamental nature of the offense is unaltered by this modification, we are convinced the military judge would

have imposed the same sentence at trial, had the error not occurred. *United States v. Augustine*, 53 M.J. 95, 96 (2000).

### *Providence of the Plea–Definition of Child Pornography*

■ After the appellant submitted his assignment of errors in this case, the Supreme Court issued its opinion in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), concerning the constitutionality of portions of the Child Pornography Prevention Act of 1996, 18 U.S.C. §§ 2251–2260. Although never formally raised as an assignment of error, we must examine the providence of the appellant's plea in light of this decision.

As previously noted, the appellant pled guilty to two specifications alleging wrongful receipt and possession of child pornography. As part of the inquiry into the providence of the plea, the military judge advised the appellant of the definition of child pornography contained in 18 U.S.C. § 2256(8), specifically:

> "Child pornography" means any visual depiction including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—
>
> A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
>
> B) such visual depiction is or appears to be of a minor engaging in sexually explicit conduct;
>
> C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct; or
>
> D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct. . . .

The appellant advised the military judge that the images in question met this definition of child pornography.

In the stipulation of fact describing the offenses, the appellant indicated "the images depicted individuals under 18 years of age engaging in sexually explicit acts." The parties also stipulated that Prosecution Exhibit 2 contained a representative sample of the images of child pornography the appellant received on his government computer and possessed in his dormitory room. The appellant told the military judge that the images in Prosecution Exhibit 2 "contain images of minors, that is people under the age of 18, engaging in sexually explicit conduct."

In *Free Speech Coalition,* decided after the trial in this case, the Supreme Court found that some language within 18 U.S.C. § 2256 defining child pornography unconstitutionally infringed upon free speech. Specifically, the Court found that the language of § 2256(8)(B), proscribing an image or picture that "appears to be" of a minor engaging in sexually explicit conduct, and the language of § 2256(8)(D), sanctioning visual depictions that are "advertised, promoted, presented, described or distributed in such a manner that conveys the impression that the material is or contains a depiction of a minor engaging in sexually explicit conduct," were overly broad and, therefore, unconstitutional. *Free Speech Coalition,* 152 L.Ed.2d at 425–26. Nonetheless, the Supreme Court reiterated that the government could constitutionally prohibit pornography involving actual children. *Id.* at 414. *See generally New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); 18 U.S.C. § 2256(8)(A) and (C).

In order to determine whether there is a "substantial basis in law and fact for questioning the guilty plea," *Milton,* 46 M.J. at 318, we must decide whether the guilty plea was based, in whole or in part, upon the portions of the definition of child pornography later struck down in *Free Speech Coalition.*

We turn first to the definition contained in 18 U.S.C. § 2256(8)(D) concerning images that were "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression" that the material was child pornography. There is no indication that the appellant believed these im-

ages to be child pornography because of the way they were advertised, presented, or displayed. The stipulation of fact makes it clear the appellant's belief that these images were individuals under 18 resulted from viewing the images himself. We are convinced that definition did not play a part in this case. *United States v. Appeldorn,* 57 M.J. 548 (A.F.Ct.Crim.App.2002). We conclude that any error of law in providing that definition did not create a substantial basis for challenging the plea.

We turn next to the definition of child pornography contained in 18 U.S.C. § 2256(8)(B), relating to an image that "appears to be" a minor engaging in sexually explicit conduct. The Supreme Court found the language of 18 U.S.C. § 2256(8)(B) overly broad because it would include "computer-generated images," "a Renaissance painting depicting a scene from classical mythology," or scenes from Hollywood movies which did not involve any children in the production process. *Free Speech Coalition,* 152 L.Ed.2d at 415. The Supreme Court also took note of the Congressional findings following 18 U.S.C. § 2251 that new technology makes it possible to create realistic images of children who do not exist. *Id.* at 414. Here, the images in question were not Renaissance paintings or scenes from Hollywood movies involving actresses over 18 years old. At no time did the appellant indicate that the pictures in question were child pornography only because they "appeared to be" actual children. Nothing in the record indicates the images in question are "computer-generated" or "virtual" photographs.

The parties agreed to the introduction of some of the images in question, and representative samples of the images were included in the record in Prosecution Exhibit 2. This also provides a basis for this Court to determine whether the appellant's pleas are provident. *United States v. Richardson,* 304 F.3d 1061, 1064 (11th Cir.2002) ("We have examined the images shown to the jury. The children depicted in those images were real; of that we have no doubt whatsoever."); *James,* 55 M.J. at 300–01. Reviewing these images, we find the pictures support the appellant's admissions that the images in question involve actual children engaged in sexually explicit conduct.

Normal usage and common sense suggest that describing a person as a "minor" or a "child" indicates the subject is a real person, unless there is some limiting language such as "appears to be," "virtual," or "computer-generated." Where, as here, the appellant stipulated that "it was obvious to him that the images depicted individuals under 18 years of age engaging in sexually explicit acts," we find a sufficient basis to conclude that the appellant believed they were images of real children. To do otherwise would require speculation on our part, and we will not "speculate post-trial as to the existence of facts which might invalidate" a guilty plea. *United States v. Johnson*, 42 M.J. 443, 445 (1995). We hold that any error of law in including the "appears to be" language from 18 U.S.C. § 2256(8)(B) in the definition of child pornography in this case did not create a substantial basis for challenging the plea.*

### Conclusion

Specification 1 of Charge II is modified as follows:

In that AIRMAN AARON R. MARTENS, United States Air Force, did, at or near Ramstein Air Base, Germany, on divers occasions between about 30 October 1998 and 3 August 2000, knowingly receive child pornography by means of a computer, conduct of a nature to bring discredit upon the armed forces.

The findings, as modified, are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed*, 54 M.J. 37, 41 (2000). Accordingly, the findings, as modified, and the sentence, as reassessed, are

AFFIRMED.

---

* Considering our disposition, it is not necessary to consider whether the evidence was sufficient to support a conviction for the attempted possession of child pornography under 18 U.S.C. § 2252A(b)(2).